315 So.2d 583

STATE of Alabama ex rel. CITY OF
BIRMINGHAM and ex rel.
George G. Seibels

v.

CITY OF TARRANT CITY.

STATE of Alabama ex rel. CITY OF
BIRMINGHAM and ex. rel.
George G. Seibels

v.

CITY OF FULTONDALE.

SC 1126, SC 1126–A.

Supreme Court of Alabama.

July 3, 1975.

James M. Tingle, Birmingham, for appellee Tarrant City.

Norris & Davis, Birmingham, for appellee City of Fultondale.

James L. North, William M. Slaughter, Frank M. Young, III, Birmingham, for appellant.

**306**

Robert S. Vance, Birmingham, for amicus curiae, City of Vestavia Hills, in support of appellees.

HEFLIN, Chief Justice.

The State of Alabama, on the relation of the City of Birmingham and its Mayor, George G. Seibels, brought two quo warranto proceedings. These two proceedings, which were combined for trial and appeal, contested the legality of three annexations of real property. Two of the annexations involved the City of Tarrant City and one involved the City of Fultondale. The circuit court entered judgments decreeing that the annexations were valid, and the City of Birmingham appeals. Those judgments are reversed and the annexations are declared invalid.

The cases were consolidated because the issues in the two cases are the same. The primary issue—the one this court finds determinative—involves a construction of Title 37, Section 137(1), Alabama Code of 1940, as amended (Recompiled 1958–1973 Cumulative Supplement). This section was adopted by the 1971 legislature (1971 Acts of Alabama, Act No. 2228, p. 3585), and reads in pertinent part as follows:

> "Whenever all of the owners of property located and contained within an area contiguous to the corporate limits of any incorporated municipality with a population of two thousand (2000) or more, located in the State of Alabama, *and such property does not lie within the corporate limits or police jurisdiction of any other municipality,* shall sign and file a written petition with the city clerk of such municipality requesting that such property or territory be annexed to the said municipality, and the governing body of such municipality adopts an ordinance assenting to the annexation of said property to such municipality, the corporate limits of said municipality shall be extended and rearranged so as to embrace and include such property and such property or territory shall become a part of the corporate area of such municipality upon the date of publication of said ordinance. * * *" (Emphasis added.)

The wording to be construed is the phrase "and such property does not lie within the corporate limits or police jurisdiction of any other municipality."

The legislature long ago defined "police jurisdiction" and that definition now appears at Title 37, Section 9, Alabama Code of 1940, as amended (Recompiled 1958). That section provides:

> "The police jurisdiction in cities having six thousand or more inhabitants shall

cover all adjoining territory within three miles of the corporate limits, and in cities having less than six thousand inhabitants, and in towns, such police jurisdiction shall extend also to the adjoining territory within a mile and a half of the corporate limits of such city or town. Ordinances of a city or town enforcing police or sanitary regulations and prescribing fines and penalties for violations thereof, shall have force and effect in the limits of the city or town and in the police jurisdiction thereof, and on any property or rights of way belonging to the city or town."

In the cases now before this court, both Tarrant City and Fultondale attempted to annex territory under the provisions of Title 37, Section 137(1). On August 19, 1974, the city council of Tarrant City adopted Ordinance 571, "An Ordinance Extending the City Limits by Annexation of Certain Contiguous Property Located Within Section 33, Township 16, Range 2 West." The property described in Ordinance 571 was owned entirely by Birmingham Realty Company, whose president had signed the necessary petition requesting annexation. On September 16, 1974, the city council of Tarrant City adopted Ordinance 578, "An Ordinance Extending the City Limits by Annexation of Certain Contiguous Property Owned by Alabama By-Products Corporation." The property described therein was owned entirely by Alabama By-Products Corporation, whose president signed the necessary petition.

The Fultondale city council on November 8, 1974, adopted Ordinance 247, "An Ordinance Annexing Certain Property to the City of Fultondale Pursuant to the Authority Granted by Title 37, Section 137(1), Code of Alabama, 1958 as Recompiled, Approved October 1, 1971." The petition requesting annexation was signed by all the property owners, a group consisting of a corporation and three individuals.

Both Tarrant City and Birmingham have populations of over 6,000 persons, according to the latest federal decennial census (1970). Fultondale has a population of less than 6,000 persons, according to the same census. The territory described in the two Tarrant City ordinances lies entirely within three miles of the city limits of Tarrant City, and also lies entirely within three miles of the Birmingham city limits. The territory described in the Fultondale ordinance lies entirely within three miles of the Birmingham city limits, and at least a portion of it lies within a mile and a half of the Fultondale city limits.

The trial court, sitting without a jury, heard testimony concerning the extent to which each municipality had historically exercised its police powers within the three areas now in question. The court made the following specific findings in the Tarrant City case:

"2. The City of Tarrant has actually performed and maintained governmental services in the areas in question by exercising its police jurisdiction authority and providing municipal services for many years and even exceeding the last past twenty (20) years. The Court finds these municipal services including police and fire protection to be exclusive, constant and very effective during the entire period of time. The Court does find that in cases of dire emergency the City of Birmingham and the City of Tarrant apparently reciprocated by coming to the assistance of either upon request of the other. Perhaps even more important, as indicative of the City of Tarrant's dominion and control of the area in question, has been their regular and constant policy and practice of levying and collecting municipal licenses and other fees for many years.

"3. That from the evidence the Court finds that the City of Birmingham historically has performed no municipal services within the areas in question except as aforesaid."

In the other case the court made essentially the same findings as to the relationship

of Fultondale and Birmingham regarding the territory sought to be annexed by Fultondale. On this appeal Birmingham has contended strenuously that these findings of fact are incorrect; however, it is not necessary for this court to consider that question.

Based upon its findings that Tarrant City, and not Birmingham, has in the past provided municipal services in the two areas sought to be annexed by Tarrant City, and that Fultondale, and not Birmingham, had in the past provided municipal services in the area sought to be annexed by Fultondale, the trial court concluded that these three areas did not lie in the Birmingham police jurisdiction. Based upon this conclusion, the trial court ruled that the three annexations were valid.

In entering its judgment that the annexations were valid, the trial court relied upon the opinion of this court in *City of Homewood v. Wofford Oil Co.,* 232 Ala. 634, 169 So. 288 (1936), and the opinion of the Court of Appeals in *Town of Graysville v. Johnson,* 33 Ala.App. 479, 34 So.2d 708 (1948), petition for cert. dismissed, 250 Ala. 507, 35 So.2d 339 (1948).

 The issue then is whether Birmingham's "police jurisdiction," as that term is used in the 1971 annexation statute, means "all adjoining territory within three miles of the corporate limits," or whether, as Tarrant City and Fultondale contend, it means only that territory within three miles of the corporate limits in which Birmingham has *in fact* exercised police power and performed municipal services.

The *City of Homewood* case, *supra,* dealt with a problem of double taxation. Title 37, Section 733, Alabama Code of 1940, as amended (Recompiled 1958), allows a municipality to tax businesses within its police jurisdiction (as did the predecessor to Section 733). Wofford Oil operated a service station within three miles of Birmingham's city limits and was taxed by

Birmingham. When Homewood was incorporated, its three-mile limit also included Wofford Oil's business. In 1930 Homewood began taxing in its police jurisdiction. It is apparent that the problem here is not the same as that presented in *City of Homewood.* That case dealt with the peculiar situation where two competing municipalities attempted to tax the same business at the same time. The present case is not at all concerned with an attempted double taxation. In fact, the present case is not concerned with the conflicting exercise of any police powers. In *City of Homewood* this court considered the definition of "police jurisdiction" in the context of a conflicting exercise of the power to tax; this court's statements in that case about the extent of "police jurisdiction" cannot, therefore, appropriately be applied in the present context of an annexation dispute, a totally unrelated problem.

The case of *Town of Graysville v. Johnson,* 33 Ala.App. 479, 34 So.2d 708 (1948), also dealt with a taxing problem. That case is likewise inapplicable in the present context of annexation.

Appellee Tarrant City also cites this court's decision in *Roberson v. City of Montgomery,* 285 Ala. 421, 233 So.2d 69 (1970), as standing for the proposition that the term "police jurisdiction," as found in Title 37, Section 9, "is not to be construed as all encompassing." That case did cite *City of Homewood v. Wofford Oil Co., supra,* as holding that "Title 37, § 9, is not all encompassing." The *Roberson* case clearly was speaking of that section's grant of police powers to be exercised within the police jurisdiction. The statement relied upon by the appellee did not refer to that section's definition of "police jurisdiction." The *Roberson* case dealt with the question whether a city had been granted the power to zone outside its city limits but within its police jurisdiction. In *Roberson* this court wrote, at 285 Ala. 422, 233 So.2d 69, "It was stipulated that both operations [junk yards sought to be regulated by the city]

were located on land outside the corporate limits of Montgomery but within its police jurisdiction." In the present case we are concerned with the definition of "police jurisdiction," and the *Roberson* case is not applicable.

Appellees Tarrant City and Fultondale rely primarily on the proposition of law that "There cannot be, at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdictions, and privileges." In support of this proposition, they cite the *City of Homewood* and *Town of Graysville* cases, *supra*, and two cases from other states. But whether this proposition is correct or not, it would not answer the question presented here. This case does not deal with the conflicting exercise of "powers, jurisdictions, and privileges"; the question before this court is not whether both Birmingham and Tarrant City (or Birmingham and Fultondale) can exercise a certain power over the same persons at the same time. In fact, the question in this case could easily have arisen even if *neither* city had ever attempted to exercise any powers in the disputed areas.

After reviewing the authorities relied on by the trial court and those cited by the appellant, this court is not persuaded that the prohibiting language of the annexation statute under review here—"such property does not lie within the corporate limits or police jurisdiction of any other municipality"—is to be given a meaning different from its rather clear and unambiguous language.

It is apparent that the purpose of Title 37, Section 137(1) was to provide municipalities with a simpler and quicker method of annexing territory than the conventional methods which require election or legislative enactment. It is this court's opinion that the legislature determined that this simpler and quicker method should be available *only* for the annexation of territory where there was complete agreement about the annexation and where there was no possibility of annexation controversy. This seems to be a plausible explanation for the proviso that the annexed territory could not lie within the corporate limits or police jurisdiction of another municipality, as well as the requirement that *all* of the property owners sign the petition.

In construing a statute, the fundamental rule of construction is "to ascertain and effectuate the intent of the Legislature as expressed in the statute." *League of Women Voters v. Renfro*, 292 Ala. 128, 290 So.2d 167 (1974).

This court is of the opinion that the legislature intended "police jurisdiction" as used in the proviso to be defined by the objective standard of a three-mile (or mile and a half) limit given in Title 37, Section 9, and that the legislature intended to prohibit this method of annexation when the proposed lands to be annexed are located within the police jurisdiction of another city. This opinion is consonant with the legislative intent to provide a simple and quick method of annexation. This court does not think the legislature intended by the proviso that a city could annex land which lies within the police jurisdiction of another city by obtaining an adjudication that it had historically performed more municipal services or exercised more control in the area than had the other city. This court holds that the legislature intended by the proviso that in cases of overlapping police jurisdictions, as defined geographically, annexations must follow the conventional procedures.

The causes are reversed and the annexations are declared null and void.

Reversed and rendered.

MERRILL, MADDOX, JONES and SHORES, JJ., concur.