319 So.2d 242

**CITY OF LEEDS et al.**

v.

**TOWN OF MOODY.**

**SC 735.**

Supreme Court of Alabama.

Sept. 18, 1975.

Charles L. Kerr, Leeds, for appellants.

498

Church & Trussell, Pell City, for appellee.

ALMON, Justice.*

Appellee, Town of Moody, filed its complaint in the Circuit Court of St. Clair County seeking injunctive relief against an ordinance enacted by the City Council of the nearby City of Leeds. The ordinance

---

* This case was originally assigned to a justice formerly on this court. It has been reassigned to the writer who has listened to the tape recordings of the oral argument.

in question, Ordinance 395, purported to annex certain real property under the authority of Tit. 37, § 137(1)–(3), Code of Alabama 1940, Recompiled 1958, which provides in pertinent part:

"Whenever all of the owners of property located and contained within an area contiguous to the corporate limits of any incorporated municipality with a population of two thousand (2000) or more, located in the state of Alabama, *and such property does not lie within the corporate limits or police jurisdiction of any other municipality,* shall sign and file a written petition with the city clerk of such municipality requesting that such property or territory be annexed to the said municipality, and the governing body of such municipality adopts an ordinance assenting to the annexation of said property to such municipality, the corporate limits of said municipality shall be extended and rearranged so as to embrace and include such property and such property or territory shall become a part of the corporate area of such municipality upon the date of publication of said ordinance. . . ." (Emphasis ours).

Contrary to the findings of the Leeds City Council made prior to the enactment of Ordinance 396, appellee's complaint charged that all of the land sought to be annexed by such ordinance did in fact lie within the police jurisdiction of the Town of Moody and, furthermore, that it was not contiguous to the corporate limits of Leeds. The requirements of Tit. 37, § 137(1) not having been met, the complaint prayed that Ordinance 395 be declared null and void. Additionally, the complaint asked that due to the alleged irreparable damage which would be suffered by the Town of Moody by the loss of territory over which it had therefore exercised its police jurisdiction, a preliminary injunction issue against the appellant from taking any further action to incorporate the disputed land and, after a hearing on the merits, appellant be permanently so enjoined.

In its answer, appellant admitted that a small triangular portion of the land sought to be annexed by Ordinance 395 did lie closer to the southernmost corporate limits of the Town of Moody than the northernmost limits of the City of Leeds. The answer also interposed a motion to dismiss all aspects of appellee's complaint which did not arise out of the question of whether or not Ordinance 395 illegally encroached upon the police jurisdiction of the Town of Moody. More specifically, since the Town of Moody had standing to protect the legal interests of only those persons who resided in the area alleged to be within its police jurisdiction, it conversely had no standing to raise the question of whether or not the portion of land annexed by Ordinance 395, but outside its police jurisdiction, was contiguous to the corporate limits of the City of Leeds.

According to the latest federal decennial census (1970), the City of Leeds has a population of 6,991; its corporate limits are situated in both Jefferson and St. Clair Counties. The 1970 population of the Town of Moody was 504; its corporate limits are situated entirely in St. Clair County. The two cities are roughly one and one-half miles apart. The testimony adduced before the trial court showed that the City of Leeds since 1950 continuously had had in force ordinances levying taxes in the form of business licenses within its police jurisdiction.

Sometime prior to April, 1973, the then representative of St. Clair County, Roy H. Coshatt, advertised in the local newspapers of St. Clair County proposed bills which if enacted would have removed the corporate limits of the City of Leeds from St. Clair County. Appellee, over objection, was allowed to introduce evidence that the Mayor of the City of Leeds, James H. Wright, and Representative Coshatt entered into discussions to see if some compromise could be reached which would be satisfactory to both municipalities and the residents living in the area between those municipalities. In essence, the resulting

agreement reached by the parties was that Representative Coshatt would not introduce the proposed bills in exchange for a promise on the part of the City of Leeds that (1) it would relinquish its police jurisdiction over any territory in St. Clair County which lay outside its existing corporate limits, and (2) it would not accept in the future any petitions for annexation of land in St. Clair County. Representative Coshatt testified that it was also agreed that fire and police protection for those inhabitants of the area theretofore serviced by the City of Leeds would become the responsibility of St. Clair County.

In several regularly scheduled meetings of the Leeds City Council, that body officially adopted the foregoing agreement and resolved to reduce same in two letters which would be sent "in good faith" to Representative Coshatt and the Chairman of the County Commission of St. Clair County, James H. McClendon. These letters, dated April 16, 1973, and July 2, 1973 were also introduced over the objection of appellant.

The Mayor of Moody, M. A. Lee, testified that pursuant to the agreement, the Town of Moody commenced rendering fire and police protection in the area, although other testimony indicated that the City of Leeds continued to assist and augment Moody's limited resources.[1] The testimony of witnesses for both parties relating to the respective quality of police and fire protection, both before and after the alleged relinquishment by the City of Leeds of its police jurisdiction, was in conflict and non-conclusory.

On January 21, 1974, Ordinance 395 was duly enacted by the City of Leeds; four days later the Town of Moody filed its action, and the circuit court thereafter granted a preliminary injunction pending a final hearing on the merits. From the fore-

going testimony and other evidentiary material, the trial court found that (1) Ordinance 395 was in "flagrant violation" of the agreement entered into by Mayor Wright and Representative Coshatt, (2) the Town of Moody, although not a landowner of the area in question, did have an interest therein and accordingly standing to challenge Ordinance 395, (3) the land was not "contiguous" to the City of Leeds as a matter of law, and (4) the agreement was a valid contract or, in the alternative, even if it was legally questionable, valuable consideration (Representative Coshatt's executed promise not to introduce the proposed bills) had moved to the City of Leeds thereby rendering it equitably estopped from questioning the validity of the contractual agreement.

Based on these findings, the trial court issued a permanent injunction against City of Leeds from exercising or attempting to exercise any governmental authority of any nature over any of the land described in Ordinance 395.

There are three methods by which a municipality may annex territory in Alabama: (1) by an act of the legislature; (2) by an election in accordance with Tit. 37, § 135, Code, supra; and (3) by complying with Tit. 37, § 137, (1)–(3), Code, supra. This latter method was the one which the City of Leeds attempted to use in the instant case.

■ The northern corporate boundary of the City of Leeds and the southern corporate boundary of the Town of Moody lie less than one and one-half miles apart. Thus, the territory between the two municipalities would be within the police jurisdiction of both municipalities according to Tit. 37, § 9, Code, supra.

This court considered the meaning of the term, "police jurisdiction," in the recent cases of *State ex rel. City of Birmingham*

---

1. At the time of trial the Town of Moody had a police force of two full-time personnel and six part-time personnel; its fire department consisted of fifteen volunteers. This same force serviced the nearby community of White Chapel and was partially funded by a LEPA grant.

*v. City of Tarrant City* and *State ex rel. City of Birmingham v. City of Fultondale,* which were combined for trial and appeal, 294 Ala. 304, 315 So.2d 583 (1975):

"It is apparent that the purpose of Title 37, Section 137(1) was to provide municipalities with a simpler and quicker method of annexing territory than the conventional methods which require election or legislative enactment. . . ." 315 So.2d at 587.

Applying a strict interpretation to the "clear and unambiguous" requirements of Tit. 37, § 137(1), that "such property [must] not lie within the corporate limits or police jurisdiction of any other municipality," the court concluded:

" . . . that the legislature intended 'police jurisdiction' as used in the proviso to be defined by the objective standard of a three-mile (or mile and a half) limit given in Title 37, Section 9, and that the legislature intended to prohibit this method of annexation when the proposed lands to be annexed are located within the police jurisdiction of another city. . . ." 315 So.2d at 587.

In arguing that the area sought to be annexed by the City of Leeds was not within the "police jurisdiction" of the Town of Moody, appellant relies upon *City of Homewood v. Wofford Oil Co.,* 232 Ala. 634, 169 So. 288 (1936), and *Town of Graysville v. Johnson,* 33 Ala.App. 479, 34 So.2d 708 (1948), cert. denied, 250 Ala. 507, 35 So.2d 339 (1948). In both of these cases the term "police jurisdiction" was within the context of the power to tax, a problem totally unrelated to the annexation dispute *sub judice.* Likewise, Tit. 37, § 733, relied upon by appellant, which allows a municipality to tax business within its police jurisdiction, applies only to taxation questions.

■ The trial court erred in permanently enjoining the City of Leeds and all other respondents from exercising or attempting to exercise any governmental authority of any nature over any of the land de-

scribed in Ordinance 395. While it was appropriate to enjoin the City of Leeds and all the respondents from attempting to exercise any governmental authority through the use of Tit. 37, § 137(1)–(3), they should not be prevented from exercising any other statutory procedure for accomplishing the same result. It is only Tit. 37, § 137(1)–(3) which was used as a vehicle for annexation in the instant case, and it is only Tit. 37, § 137(1)–(3) which contains the phrase, "and such property does not lie within the corporate limits or police jurisdiction of any other municipality . . . ."

■ The agreement between appellants and Roy H. Coshatt should not have been admitted into evidence. The agreement purported to bind the City of Leeds (1) to relinquish its "police jurisdiction" over any territory in St. Clair County which lay outside its existing corporate limits; and (2) to refrain from accepting any petitions in the future for annexation of land in St. Clair County. Municipalities are mere instrumentalities of the state possessing only such powers as may have been delegated to them by the legislature. *State ex rel. Britton v. Harris,* 259 Ala. 368, 371, 67 So.2d 26, 28 (1953). The powers which the City of Leeds was purporting to give up are legislative powers delegated to the municipality by the legislature. Neither the mayor nor the council had authority to relinquish these legislative powers. Since a municipality cannot by any provision or terms in a contract delegate or barter away a governmental power, the agreement which purported to do so in the present case was null and void. *Mayor v. Birmingham Water Works Co.,* 139 Ala. 531, 36 So. 614 (1904).

■■ It was error for the trial court to decree that the City of Leeds and all of the other respondents were estopped from questioning the legality of their agreement with Representative Coshatt. The City of Leeds had no authority to enter into the agreement, and a municipality cannot be estopped by doing that which it had no au-

**502**

thority or right to do. *Board of School Commissioners of Mobile County v. Hudgens*, 274 Ala. 647, 651, 151 So.2d 247, 252 (1963).

 Appellee alleges that appellant City of Leeds discontinued exercising police and fire protection in the area in question and thereby waived and relinquished its police jurisdiction over the area. In support of this contention, appellee cites *State ex rel. Martin v. City of Gadsden*, 216 Ala. 243, 113 So. 6 (1927). In the *Martin* case this court was concerned with the corporate boundaries of two municipalities, a matter which the legislature has allowed the local citizenry to determine. Tit. 37, § 10, Code, supra. The present case on the other hand deals with "police jurisdiction," a matter separately determined by the legislature and delegated to the municipalities alone. Tit. 37, § 9, Code, supra. Since a municipality cannot barter away a governmental power specifically delegated to it by the legislature, *Mayor v. Birmingham Water Works Co.*, supra, it follows that it also cannot waive or relinquish such power.

The land which was sought to be annexed by the City of Leeds was separated from its corporate limits by an interstate highway. Tit. 37, § 137(1), the statute which was utilized in the attempted annexation, provides only for annexation of "contiguous" land. Appellee correctly cites two Alabama cases in which the court defined "contiguous" as requiring a "touching." While a "touching" is normally a requirement of the word, "contiguous," such is not the case where the physical separation occurs merely because of the interposition of a public highway. *Cabler v. Alexander*, 111 Or. 257, 271, 224 P. 1076, 1080 (1924).

 In *White v. City of Decatur*, 225 Ala. 646, 144 So. 873 (1932) this court in construing the meaning of the term, "adjoining," in Tit. 37, § 9, the statute on police jurisdiction, stated that:

" . . . the territory immediately north of the corporate limits of the City

of Decatur . . . lies next to, connects with, and *is contiguous to* said north corporate line, and this is so, *notwithstanding the river and the county line* intervene between the corporate line and petitioner's place of business . . . ." 225 Ala. at 648, 144 So. at 874 (Emphasis ours).

Thus, it would appear to be conclusive that a public highway is not the type of physical separation which would prevent two pieces of land from being "contiguous" within the meaning of the statute.

The judgment is affirmed insofar as it enjoins the City of Leeds and all the respondents from attempting to exercise any governmental authority through the use of Tit. 37, § 137(1)–(3), over any of the land described in Ordinance 395, which is within the police jurisdiction of the Town of Moody.

The judgment is otherwise reversed and the cause is remanded for entry of judgment in conformity with this opinion.

Affirmed in part, reversed in part, and remanded with directions.

HEFLIN, C. J., and BLOODWORTH, FAULKNER, JONES and SHORES, JJ., concur.