On Application for Rehearing

PITTMAN, Judge.
The opinion of January 10, 2003, is withdrawn, and the following is substituted therefor.
The Fort Morgan Civic Association, Inc., Tom Hodges, Bonnie P. Lowry, and Karen Riddle (collectively referred to as “the association”) appeal from the trial court’s judgment affirming the approval by the Baldwin County Commission (“the county commission”) of a planned residential development (“PRD”) to be developed by Fort Morgan Paradise Joint Venture (“Paradise”).
Paradise owns two parcels of property on either side of a separate parcel of property owned by Gulf Highlands Development, LLC (“Gulf Highlands”). The western parcel owned by Paradise (“the western parcel”) is 53.3 acres and has a very narrow beach front. Paradise also owns 25.66 acres containing a larger beach front and a private beach easement, making it more suitable for development (“the eastern parcel”). The northern boundary of all three parcels is Alabama Highway 180, also known as Dixie Graves Parkway or Fort Morgan Road.
At a meeting held on May 3, 2000, the Baldwin County Planning and Zoning Commission (“the planning commission”) considered Paradise’s application to rezone the eastern parcel and to establish a PRD. Under Article 23 of the Baldwin County zoning regulations, Paradise needed “3 contiguous acres or more” of land in order to establish its proposed PRD. Paradise sought to have the eastern parcel of land rezoned from a single-family district to a multifamily district. The proposed PRD encompassed the total acreage of both the eastern and the western parcels, 78.96 acres. The PRD was described in the *141 minutes of the planning commission’s meeting, in pertinent parteas follows:
“The proposed development includes two high rise towers, 12 single family lots and a commercial area. A‘total of 473 dwelling units are proposed. The applicant is proposing to develop two 20 story towers on the site with a total of 442 dwelling units. Twelve single family lots are proposed and 19 units are proposed within the commercial area. The commercial area is proposed as a ‘village center’ and will be connected to the commercial development in the Beach Club. The applicant is proposing to set aside approximately 65 acres as common area and other open space. 11.67 acres are designated as common area and 53.3 acres as ‘areas not to be developed.’ ”
(C. 30.) The Beach Club is an existing resort development that is located to the east of the eastern parcel. All of the dwelling units in the PRD were to be constructed on the eastern parcel, with the western parcel to remain in its natural state. The 473 dwelling units were based upon the entire acreage in the proposed PRD; the western parcel was already zoned as a multifamily district and, if the eastern parcel were also rezoned as a multifamily district, Paradise could build 6 dwelling units per acre — or 473 units — in the PRD.
After considering Paradise’s application and hearing statements in support of and in opposition to the PRD, including statements by members of the association, the planning commission approved Paradise’s application subject to the grant of a conservation easement[1] on the western parcel to an organization acceptable to the county commission.
The PRD approved by the planning commission would allow Paradise to build 473 condominium units on the eastern parcel because of the planning. commission’s determination that the eastern and western parcels were contiguous. If not zoned in conjunction with the western parcel, the eastern parcel could be approved for only 154 dwelling units. The western parcel, if not zoned in conjunction with the eastern parcel, could be approved for over 300, but it is a less desirable development because of its narrow beach frontage. Therefore, Paradise proposed placing 473 units on the eastern parcel, and placing the western parcel in a “conservation easement.” The majority of the 473 units would be in two 20-story high-rise condominiums located on the eastern parcel’s beach front.
At or near the time that Paradise sought its PRD, Gulf Highlands sought a PRD to build high-rise condominium units on a portion of its property, with the remainder of its property to be placed in a conservation easement. The Gulf Highlands PRD would be next to Paradise’s proposed highrise condominiums.
The county commission considered Paradise’s application for rezoning and for a PRD at a June 20, 2000, meeting. At that meeting, Kevin Cowper, who was, at that time, the planning director for the county commission, presented a recommendation by the planning commission’s staff that the county commission grant Paradise’s application for rezoning and for a PRD. The county commission also heard statements in support of and in opposition to the PRD, including statements by members of the association. At the conclusion of the hearing, the county commission adopted a resolution approving Paradise’s application to rezone the eastern parcel to a multifamily *142 district and approving the PRD, subject to certain conditions, including the establishment of a conservation easement on the western parcel.
On December 14, 2000, the association filed a complaint in the Baldwin County circuit court, seeking a writ of mandamus and injunctive relief against the county commission and alleging, in pertinent part, that
“the county commission in its decision arbitrarily disregarded and violated the requirements of its adopted zoning regulations by approving a development which will substantially exceed applicable maximum density requirements under the ordinance by arbitrarily and erroneously deeming two parcels [owned by Paradise] to be contiguous.”
(C. 5.) On February 1, 2001, the county commission filed a response asserting the affirmative defenses of (1) failure to state a claim upon which relief could be granted; (2) laches; (3) estoppel; and (4) waiver. On May 21, 2001, the association filed an amended complaint adding a count seeking a declaratory judgment. On October 19, 2001, the county commission filed an amended answer asserting as an additional affirmative defense that the association lacked standing.
On October 22-23, 2001, the circuit court conducted a bench trial on the association’s claims. On December 3, 2001, the circuit court entered an order denying the relief the association requested; that order contained the following findings:
“1. [C]ontiguous is defined in Article 2 Section 2.2 of the Baldwin County Zoning Regulations and therefore this court is to apply that definition.
“2. The purpose of a [PRD] is set forth in Article 23 of the Baldwin County Zoning Regulations.
“3. The [association] failed to present sufficient enough evidence to establish that the [county commission] exceeded its discretionary function in applying zoning regulations under Articles 2 and 23 of the Baldwin County Zoning Regulations.
“4. This court makes no finding as to whether the approving of the [PRD] is the best use of the land, but only finds that the [county commission] did not act arbitrarily and capriciously by approving the [PRD].”
(C. 47-48.) Thereafter, the association filed a postjudgment motion; the county commission filed an opposition to that motion on December 28, 2001.
On March 14, 2002, the circuit court entered an amended order again denying relief to the association. The amended order contained, in pertinent part, the following findings:
“1. Prior to the action by the [county commission] that was made the basis of this lawsuit, the real property in question had been zoned R-6, which allows for 6 units per acre of residential development.
“2. The proposed [PRD] by [Paradise] that has been commonly referred to as ‘Beach Club West’ did not request a change in the zoning but requested that the 6 unit per acre allowance on the real property in issue be ‘pooled’ into a mul-ti-level building and/or multi-level buildings along the beach along the area commonly known as Fort Morgan Road.
“3. [Paradise] did not request that the [county commission] approve additional units but that the 6 unit per acre total be concentrated in one area with the remaining amount of the real property being left unimproved or undeveloped.
“4. In addition to the development known as ‘Beach Club West’ the county commission considered a development project that was to be developed imme *143 diately west of this development known as ‘Gulf Highlands Development.’ This development had also received a [PRD]. “5. Both [Paradise and Gulf Highlands] had received tentative approval from the Alabama Department of Environmental Management (ADEM) and the Fish and Wildlife Agency. Fish and Wildlife approved upon the recording of a conservation easement which would protect and prohibit any further development of the property in an effort to preserve and protect wildlife and its natural habitat. ...
“6. [Paradise and Gulf Highlands] presented to [the planning commission] and [the county commission] two PRDs that would include continuous beach between the development and conservation easements, as well as the fact that the two developments were adjoining each other. (The court notes and was aware that the developments were not joint PRDs and that they were presented and approved separately. However, the county commission appeared to have considered the two developments as fitting together and being appropriate as fitting together. Therefore, it appears that the county commission considered the two projects consistent with one another with both projects providing advantages to each other.)
“7. In the definitions section of ... Baldwin County’s Planning and Zoning Regulations is a specific definition of contiguous. The [association] offered several common and legal definitions of contiguous in reference to Webster’s and Black’s Law Dictionary. However, those definitions were relatively consistent in that the term ‘contiguous’ was defined with property being next to or adjacent to another piece of property or divided by a common easement or right of way running parallel to the property. However, the definition contained in the Baldwin County Regulations makes no mention of the term parallel. The [county commission] appeared to have considered several conservation and right of way easements that ran perpendicular to the properties in issue so that the easements and right of ways ran across the ‘Gulf Highlands’ property and connected the two ‘Beach Club West’ properties. The [county commission] considered this to meet the definition of contiguous.
“8. [The county commission] also presented evidence that the term ‘3 acres or more of contiguous land’ could be interpreted to mean that as long as 3 acres were contiguous that the balance of the acreage could be non-contiguous to the development. The court does not agree with that interpretation of Section 23.3(a) of the PRD section of Baldwin County’s Planning and Zoning Regulations.
“9. Traffic studies were presented to consider the increase[d] traffic flow to the property along the public roadway. The development could cause substantial increase in the flow of traffic both during a high use time as well as during emergency times such as hurricane evacuations. With this property being on the beach of the Gulf of Mexico, emergencies such as hurricane evacuations are reasonable factors to [be] considered] by the county commission in approving any developments such as the one in issue. However, the evidence indicated that although the traffic would be tremendously increased, it still would not exceed or even reach the maximum use of the public roadway along Fort Morgan Road. In fact, it will not reach 70% of the maximum capacity of traffic that the roadway could handle, according to the survey.
*144 “10. The [county commission], in approving this PRD, considered the conservation easement, the beach use easement, the traffic study, the tentative approval by [ADEM], and the Fish and Wildlife Agency, the consistency and continuity of this development with the Gulf Highlands development, the definitions of contiguous, adjacent and rights of way and the limitations of the actual amount of land used in the structures being built and the structural improvements being placed on the property in reaching its decision to approve this [PRD]. The [county commission] further considered that this development would use only a small amount of the land surface and would protect and prohibit the development of the balance of the land. All these factors were considered by the [county commission] in approving this [PRD].”
(C. 56-60.) On March 27, 2002, the association filed a notice of appeal to this court; it filed an amended notice of appeal on April 1, 2002.
On appeal, the association argues that the county commission violated the county zoning regulations when it determined that Paradise’s eastern and western parcels of property were “contiguous” in conjunction with granting Paradise’s application for a PRD. The association further contends that this decision was arbitrary and capricious because, it argues, there are no clear, objective criteria by which the county commission could have determined that the two parcels are contiguous.
We first consider whether the association has standing to challenge the county commission’s decision, “[b]ecause jurisdictional issues, including that of standing, should be considered by an appellate court ex mero motu.” Alaplex Transp., Inc. v. Rossen, 836 So.2d 901, 905 (Ala.Civ.App.2002). Our supreme court has stated that standing hinges on “ ‘whether the party has been injured in fact and whether the injury is to a legally protected right.’ ” State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1027 (Ala.1999) (quoting Romer v. Board of County Comm’rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998)) (Kourlis, J., dissenting) (emphasis omitted).
“ ‘ “[0]ne has standing to bring his complaint into court if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case.” Furthermore, to be a proper party plaintiff, the party must have “an interest in the right to be protected.” ’ ”
Ex parte Steadham, 629 So.2d 647, 648 (Ala.1993) (quoting Ex parte Marshall Durbin & Co. of Jasper, 537 So.2d 496, 497-98 (Ala.1988)) (citations omitted). With specific reference to the issue of standing under § 11-52-81, Ala.Code 1975,[2] our supreme court has held:
“ ‘In order for a party to have standing to challenge the decision of a zoning board of adjustment he must be a “party aggrieved.” To establish himself as a “party aggrieved” he must present “proof of the adverse effect the changed status of the rezoned property has, or could have, on the use, enjoyment and value” of his own property.’ ”
Steadham, 629 So.2d at 648 (quoting Crowder v. Zoning Bd. of Adjustment of Birmingham, 406 So.2d 917, 918 (Ala.Civ.App. 1981)).
Having reviewed the record in this case in light of the principles discussed *145 above, we conclude that the association presented substantial evidence that the county commission’s decision “could have” an adverse effect upon its members’ use and enjoyment of their property or on the value of its members’ property. Clifton Thomas Hodges[3] testified that the members of the association would suffer from increased traffic, hampered evacuation services, and longer medical-response delays caused by the projected increase in population density caused by the development of the PRD. Hodges also claimed that destruction of wildlife habitat and urban sprawl would result from the PRD; he stated that all residents in the area would suffer from a decrease in effective provision of county services as a result of the proposed high-rise development. Although Hodges did not testify about any negative effects the PRD would have on property values, the trial court could infer such effects from a general understanding of the effect a high-density development could have in a relatively rural and undeveloped area. Such evidence and reasonable inferences therefrom satisfied the association’s burden of showing that its members were “parties aggrieved” by the county commission’s decision.
Our supreme court first discussed the standard of review applicable to appellate review of a zoning decision approving a planned unit development, such as the PRD proposed by Paradise, in City of Tuscaloosa v. Bryan, 505 So.2d 330 (Ala.1987), in which that court stated the standard of review “should be the same as our standard of review of the rezoning of an area.” 505 So.2d at 337. The standard of review in rezoning cases is “whether the reclassification is sound and fair. If it is fairly debatable as to whether the reclassification is sound and fair, the Court will not substitute its judgment for that of the [local government].” Id. The “fairly debatable” rule was discussed in American Petroleum Equipment & Construction, Inc. v. Fancher, 708 So.2d 129 (Ala.1997). Our supreme court determined that “ ‘ “[i]f the application of a zoning classification to a specific parcel of property is reasonably subject to disagreement, that is, if its application is fairly debatable, then the application of the ordinance by the zoning authority should not be disturbed by the courts.” ’ ” 708 So.2d at 131 (quoting Byrd Cos. v. Jefferson County, 445 So.2d 239, 247 (Ala.1983), quoting in turn Davis v. Sails, 318 So.2d 214, 217 (Fla.Dist.Ct. App.1975)).
The portions of the Baldwin County zoning regulations applicable to the county commission’s approval of a developer’s PRD application state, in pertinent part:
“Article 23. Planned Development Districts
“Section 23.1 Purpose
“The regulations established in this article are intended to provide optional methods of land development which encourages imaginative solutions to environmental design problems, with provisions for residential, institutional, recreational, office, commercial, and industrial uses which are characterized by a unified building and site development program providing for eoordinat- *146 ed open space and architectural treatment.
“Section 23.2 Definitions
“Words and phrases used in this section shall have the meanings as set forth in this section. Words and phrases not defined in this section but defined elsewhere in the zoning regulations shall be given the meanings as set forth in such regulations. All other words or phrases shall be given their common, ordinary meaning unless the context clearly requires otherwise.
“Planned development. A development of land that is under unified control and is planned and developed as a whole in a single development operation or programmed series of development stages. “§ 23.3 Planned Residential Developments (PRD)
“(a) Development area. A planned residential development, occupying 3 contiguous acres or more may be established in a residential district or RA district within those Planning Districts which permit planned residential developments .... ”
(Emphasis added.) The term “contiguous” is defined in the definitions section of the zoning regulations as follows:
“Abutting/contiguous property. ' Any property that is immediately adjacent to, touching, or separated from such a common border by a right-of-way, alley, or easement.”
The minutes of the May 3, 2000, meeting of the planning commission reflect that Allan Chason, an attorney for Paradise, stated that the eastern and western parcels were contiguous because they were connected by Gulf Highlands’ proposed conservation easement, a private beachfront easement, and interior rights of way. Kevin Cowper, who was, at that time, the planning director for the county commission, testified at trial that the rights of way through the property owned by Gulf Highlands Development created a common border between the eastern and western parcels.[4] Cowper also stated that the parcels were “immediately adjacent.”
Cowper opined that the eastern and western parcels were contiguous by virtue of the private beach easement. Both Gulf Highlands’ parcel and Paradise’s eastern parcel had a private beach easement entitling them to the use of the beach in front of the block in which their property is situated. In other words, only Paradise is entitled to use the beach in front of its property and only Gulf Highlands is entitled to use the beach in front of its property.[5] Before Baldwin County adopted its zoning regulations, a subdivision had been platted, creating the private beach easement as to Paradise’s eastern parcel and Gulf Highlands’ property; this subdivision was “grandfathered in” when Baldwin County adopted its zoning regulations. Cowper also stated that the proposed conservation easement located on the unused portion of the Gulf Highlands property connects the eastern and western parcels owned by Paradise.
Arthur Bailey duMont, the city planner for the City of Mobile, who had 30 years experience in the area of zoning and planning at the time of trial, testified for the association. Based on a thorough review of the zoning regulations and other materials presented to the county commission, duMont opined that Paradise’s two parcels *147 were not contiguous because the two' parcels do not share a common boundary. duMont further testified thát if he, someone who possesses a wealth of zoning and planning experience, had difficulty determining how these two parcels could be deemed contiguous, then the general public would be unable to accurately predict what parcels might be considered contiguous in future applications of such an indefinite standard.
At first glance, the disagreement over the definition of “contiguous” might suggest that this issue is “fairly debatable.” However, our supreme court has reviewed the definition of the term “contiguous” in numerous annexation cases over the years. Our supreme court has held that “contiguous” means that there must be a “ ‘touching at some point.’ ” City of Dothan v. Dale County Comm’n, 295 Ala. 131, 134, 324 So.2d 772, 775 (1975). An exception to the actual “touching-at-some-point” rule occurs when the property is divided by a public roadway, City of Leeds v. Town of Moody, 294 Ala. 496, 502, 319 So.2d 242, 246 (1975), or by a public waterway, Spanish Fort v. City of Daphne, 774 So.2d 567, 574 (Ala.2000).
In the case before us, the definition of contiguous property found in Article 2, Section 2.2 of the Baldwin County zoning regulations states that the property must be “adjacent to, touching, or separated from such a common border by a right of way, alley, or easement.” (Emphasis added.) While it is true that the eastern and western parcels of land are separated by a conservation easement[6] as well as a stretch of private beach, the reality is that these are two distinct and noncontiguous parcels of land. Paradise capitalized upon the fact that the conservation easement, which begins on its eastern parcel of land, abuts directly upon the Gulf Highlands conservation easement that ends where Paradise’s western parcel abuts the Gulf Highlands property at its western border.
The two parcels owned by Paradise are divided not only by a separately owned piece of property, but also by a stretch of beach and several undeveloped public roads. As the trial court noted in its order, it seems that both the planning commission and the county commission considered Paradise’s and Gulf Highlands’ PRDs as “fitting together.” It appears that the county commission, in attempting to allow Paradise to maximize its beach frontage and to obtain the conservation easements from both Paradise and Gulf Highlands, applied its own rules in an arbitrary and capricious manner. In short, the easements and rights of way do not divide the eastern and western parcels owned by Paradise — a separately owned piece of property does.[7]
We conclude that Paradise’s two completely separate pieces of property are not “contiguous,” even under the definition of that term provided in the Baldwin County' zoning regulations. Historically, *148 Alabama courts have given great deference to a zoning authority’s interpretation of its own regulations; however, it is also clear that appellate courts must declare invalid the exercise of zoning power that “ ‘is shown to be clearly arbitrary, capricious, or unreasonable.’ ” Homewood Citizens Ass’n v. City of Homewood, 548 So.2d 142, 143 (Ala.1989) (quoting 2 Am.Jur.2d Zoning and Planning § 338 (1976)). By deciding that the parcels of land owned by Paradise were contiguous, the county commission applied its own zoning regulations in an arbitrary and capricious manner. Because we have determined that the county commission’s decision was arbitrary and capricious, we reverse the judgment of the trial court and remand the cause for the trial court to enter a judgment consistent with this opinion.
OPINION OF JANUARY 10, 2003, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
YATES, P.J., and MURDOCK, J., concur.
CRAWLEY and THOMPSON, JJ., dissent.

. The circuit court described the conservation easement as one "which would protect and prohibit any further development of the property in an effort to preserve and protect wildlife and its natural habitat.”

. This statute provides for an appeal to a circuit court from a zoning board of adjustment's decision.

. While Hodges lives six and one-half miles west of the proposed PRD, he testified that other association members live "immediately next door,” "right across the road,” and within several miles of the proposed PRD. In lieu of extended and potentially cumulative testimony, the trial court accepted a stipulation that the other association members who did not testify had suffered the same kinds of “adverse effects” as those described by Hodges.

. We note that these rights of way are undeveloped public streets dedicated on a plat for use as public streets.

. Gulf Highlands intervened in this action, seeking an order that Paradise does not have the right to use that portion of the private beach in front of Gulf Highlands’ property.

. A conservation easement on the eastern parcel of Paradise's PRD actually abuts a conservation easement on the Gulf Highlands parcel (a separately owned piece of property that is located between the eastern and western parcels of land owned by Paradise).

. Cf. Brazeau v. Department of Health & Social Servs., 154 Wis.2d 752, 454 N.W.2d 32 (Ct.App.1990) (two residential facilities were not contiguous where they were divided by a 50-foot strip of land owned by a third party even though both facilities had joint use of the strip of land); see also Route 4 Assocs. v. Town of Sherburne Planning Comm'n, 154 Vt. 461, 578 A.2d 112 (1990) ("Contiguous” standard iñ town zoning regulation that required a minimum of five acres for a planned unit development was not" met where lots of 3.8 acres and 2.39 acres were separated by a privately owned strip of property).