PER CURIAM.
The City of Prattville appeals from a summary judgment entered in favor of the City of Millbrook in a declaratory judgment action brought by the City of Prattville. In its action, Prattville had asked the trial court to declare invalid certain annexations by Millbrook.[1]
The trial court’s judgment reads as follows:
“FINAL JUDGMENT ...
“This matter is before the Court on Summary Judgment Motions filed by Plaintiff and Defendant. After considering the pleadings, the evidence and the applicable law, the Court enters this ... Summary Judgment in favor of the Defendant in the Complaint and in favor of the Plaintiff in the Counter-Complaint filed by Defendant herein.

“FINDINGS OF FACT

“The parties have stipulated that there is no disagreement as to the facts in this case. Pursuant to that stipulation, the Court finds the facts as follows:
“1. The Plaintiff and Counter-defendant is the City of Prattville, Alabama, hereinafter referred to as Prattville, an incorporated municipality located primarily in Autauga County. However, a small area of the City lies within Elmore County.
“2. The Defendant and Counter-plaintiff is the City of Millbrook, Alabama, hereinafter referred to as Millbrook, an incorporated municipality located in El-more County.
“3. Millbrook and Prattville have overlapping police jurisdictions. Interstate [Highway] 65 is a natural boundary between the cities. The corporate limits of each city come to Interstate 65 at some point. Master plans, crafted by the Central Alabama Regional Planning and Development Commission, called for Prattville to annex to the west side of Interstate 65 and Millbrook to annex to the east side of Interstate 65.
“4. The County of Elmore is the owner of an abandoned L & N Railroad bed. The property is 75 feet wide along some sections of the property and 100 feet wide along other sections. On a part of the property, there is a county road. The road runs down the center of the railroad bed with an equal amount of the railroad bed property extending out from the county road. County Road Number 10 ends at State Highway 14 at an angle and the abandoned railroad bed crosses the State Highway and continues another three-quarters of a mile, ending just west of Interstate 65 after re-crossing Highway 14.
“5. In 1988, Millbrook approached the County of Elmore with an offer to purchase the abandoned railroad bed. The County would not sell the property to Millbrook but did agree to annex the property into the City. On May 31, 1988, the Elmore County Commission voted, unanimously, to submit a petition re *269 questing that the property be annexed. Pursuant to their unanimous resolution, Judge Edward Enslen, Elmore County Probate Judge and Chairman of the County Commission, and Kathy Trawiek, County Administrator, petitioned Mill-brook to annex the old railroad bed.
“6. County Road 10 follows the annexed property for approximately two miles before it reaches Highway 14. From that point no public right-of-way follows the abandoned railway property which was annexed.
“7. Because of the overlapping police jurisdictions, Millbrook annexed the property by adopting several annexation ordinances in order not to impermissibly encroach into the police jurisdiction of Prattville.
“8. The annexation of the Elmore County property was first accomplished by a series of ordinances beginning with Ordinance 88-10 on June 16, 1988, and ending with the adoption of Ordinance 88-15 on July 7, 1988.
“9. Between July 21, 1988, and early 1989, the legality of these annexation ordinances was not questioned. In early 1989, representatives of Summitt, Incorporated, approached Millbrook, requesting the annexation of a 440-acre tract of land. The land was to be used to develop a large residential subdivision. The property was annexed on February 13, 1989, using the Elmore County railroad property for the required contiguity.
“10. At the request of another property owner, Dr. Mervel Parker, the city annexed another 60-acre parcel of property located between Summitt Estates and the railroad property.
“11. Shortly after February 27, 1989, the date on which the Parker property was annexed, Prattville filed a complaint asserting that Millbrook had impermissi-bly annexed into the police jurisdiction of Prattville.
“12. During early March 1989, other landowners, Horace Powell, Mayrene Robertson, and Russell Oil Corporation, requested that Millbrook annex and provide services to property owned by them. This property was located in the northwest quadrant of the intersection of Interstate 65 and State Highway 14. Again, because of the overlapping City Limits of the two cities, it was necessary for Millbrook to adopt a series of annexation ordinances beginning on March 13, 1989, and concluding on May 22, 1989, in order to bring the property into Mill-brook.
“13. Meanwhile, Prattville was adopting a series of ordinances taking in property which advanced the Corporate Limits of Prattville toward Interstate 65. Each annexation made by either city diminished the police jurisdiction of the other city.
“14. The series of annexations of Millbrook was challenged by Prattville, resulting in the filing of a declaratory judgment action in the Circuit Court of Elmore County, Alabama, under Civil Action Number CV-89-083. This action asked the Court to invalidate any and all of those certain annexations by Millbrook which lie within or may lie within Pratt-ville’s police jurisdiction. Due to a technical problem in the pleadings, the undersigned judge who had been specially appointed to the case ruled in favor of Millbrook and the matter was dismissed on the first day of May 1990. Prattville filed the instant lawsuit on May 10, 1990.
“15. In May 1989, Millbrook apparently discovered a fatal error in the first annexation ordinance of the railroad bed property. On June 13, 1989, in an effort to meet every statutory requirement and to ensure that [its] annexation was proper and legally correct, Millbrook rescinded all of the municipal ordinances dealing with the railroad property annexations, the Summitt Estates, the Parker property, the Horace Powell and Mayrene Robertson property, and the Russell Oil property.
“16. The new series of ordinances included the Elmore County property and three additional properties, whose owners had petitioned Millbrook. The three other properties were adjacent to, but not a part of, the railroad bed. The owners of the various properties annexed *270 would not have been able to receive full municipal services from any city if Mill-brook had not brought them into their corporate limits. The various leaders of Prattville, by depositions submitted to the Court, acknowledged that they have no plans to extend [Prattville’s] corporate limits beyond Interstate 65.
“17. Millbrook has provided service to the annexed area since the time of annexation of the property.
“18. The new lawsuit filed by Pratt-ville was a declaratory judgment action challenging the validity of certain ordinances enacted by Millbrook.
“19. A Counterclaim was filed by Millbrook. However, because Counsel for the City conceded the Summary Judgment Motion filed by Prattville should be granted as to the Counterclaim, this Order will not address the legal issue raised in the Counterclaim.
“20. Millbrook passed the following ordinances which are challenged by this lawsuit:
“THE ORDINANCE DATE PASSED DATE PUBLISHED
89-22 June 13, 1989 June 15, 1989
89-23 June 19, 1989 June 22, 1989
89-24 June 26, 1989 June 29, 1989
89-28 June 26, 1989 June 29, 1989
89-29 June 26, 1989 June 29, 1989
89-30 June 26, 1989 June 29, 1989
89-32 June 29, 1989 July 6, 1989
89-33 June 29, 1989 July 6, 1989
89-34 July 6, 1989 July 13, 1989
89-35 July 6, 1989 July 13, 1989
89-37 July 17, 1989 July 20, 1989
89-38 July 17, 1989 July 20, 1989
89-40 July 24, 1989 July 27, 1989
89-41 July 24, 1989 July 27, 1989
“21. All of the foregoing ordinances were annexation ordinances which brought property into the Corporate Limits of Millbrook and which did not go beyond the equidistant point of the overlapping police jurisdiction of the two neighboring cities. The ordinances were adopted and published pursuant to a petition of the owners of the property.
“22. No petition was rejected by Mill-brook. Every property owner who submitted a petition to be brought into the corporate limits was admitted.
“ALLEGATIONS OP PLAINTIFF AND CONCLUSIONS OF LAW
“There are three methods by which a municipality may annex territory in Alabama. A city may annex property by legislative act, by an election in accordance with Ala.Code 1975, § 11-42-2, and by petition in accordance with Ala. Code 1975, § 11-42-21. Millbrook utilized the petition method when it annexed the property which has been previously described. Whether the City complied with the law is the question which this Court has been called upon to answer.
“1 Section 11-42-21 ... was enacted by the legislature to provide municipalities with a simpler and quicker method of annexing territories than the conventional methods. See State ex rel. City of Birmingham v. City of Tarrant City, 294 Ala. 304, 315 So.2d 583 (1975). Presumably, the legislature recognized that in many parts of the state, owners of property desired city services which could be made available if their property was annexed. This is the situation in which the property owners and Millbrook found themselves.
*271 “In Alabama there is no specified form for a petition for annexation of land to a city. Section 11-42-21 specified that a petition be signed by all the owners. The petition, which has been attacked by Prattville and which is the specific piece of territory [sic] which makes all the other property ‘contiguous’ with the corporate limits, is signed by the Chairman of the Elmore County Commission and [by the] County Administrator, who would be the proper person to attest the Chairman’s signature. The official titles were omitted from the document. However, considering the entire document [and]' the certified resolution of the El-more County Commission with all attachments, this Court finds that it complies with all the required elements in § 11-42-21. The document, taken as a whole, fully and substantially meets the requirements of the statute which are necessary to support the adoption of an ordinance to annex the described property to Mill-brook. City of Birmingham v. Mead Corp., 872 So.2d 825 (Ala.1975).
“Prattville also argued at hearing that the 1988 petition of Elmore County requesting annexation was ‘re-used’ in the subsequent reannexation procedures. For the reannexation to be valid, Pratt-ville argued, a new petition should have been issued and filed.
“Since the Court finds no case on point and in light of the fact that there is no evidence that the Elmore County Commission rescinded [its] unanimous resolution requesting annexation, this Court is not persuaded that the 1988 petition is ‘stale.’
“Prattville further contends that all of the property owners did not sign the petition. [It] argue[s] that the State of Alabama and therefore the public owns County Road Number 10 and State Highway Number 14. This Court rejects this argument because public roads have not been considered barriers to annexation. Customarily in Alabama, annexations cross public highways without petition. In City of Birmingham v. Smith, in Footnote 3, 507 So.2d 1312, 1318 (Ala.1987), it was recognized that because a city can annex to and across a highway right-of-way does not mean the annexation must necessarily include the intervening right-of-way, such as State Highway 14 in the case at bar. See City of Leeds v. Town of Moody, 294 Ala. 496, 319 So.2d 242 (1975).
“This Court is satisfied that Judge En-slen was the proper person to sign the petition, with his signature being properly attested by the County Administrator, particularly in light of the unanimous resolution of the County Commission. This is an annexation petition, not a deed.
“This Court finds that the Millbrook City Council acted within the authority granted under the provisions of § 11-42-21. Therefore, it did not act arbitrarily or capriciously. In a municipal annexation, a city council acts legislatively and the validity of its actions is presumed. Chadwick v. Town of Hammondville, 270 Ala. 618, 120 So.2d 899 (1960).
“2. It is clear that the ordinances adopted by both cities reduced the police jurisdiction of the other city. However, it is equally clear that the law of Alabama allows a city to extend its corporate limits into the police jurisdiction of another municipality as long as the extension is not beyond a boundary which is equidistant from the respective corporate limits of each of such incorporated municipalities having overlapping ... police jurisdiction^]. § 11-42-21. Further, a city may again extend its corporate limits provided the municipality has complied with all other requirements under the statute. § 11-42-21. See City of Prichard v. City of Saraland, 536 So.2d 1386 (Ala.1988). In the case at bar, Millbrook extended its corporate limits several times. However, each time the ordinances clearly set out that the city limit extension is ‘not beyond midway between the existing city limits of the cities of Millbrook and Prattville.’
“3. There is no requirement that cities and towns be regular in shape, but the law clearly necessitates that the area to be annexed must be contiguous and homogeneous. The Alabama Su *272 preme Court, in City of Dothan v. Dale County Comm’n, 295 Ala. 131, 324 So.2d 772 (1975), held that a ‘substantial common boundary’ was not required and that an annexation corridor of 350 feet in width was sufficient where there was a legitimate and valid municipal interest.
“This Court expressly finds that the abandoned railway bed of 100 feet, though it contains a roadway, does suffice [to meet] the contiguity [requirement] and that a strip, one mile in length, obviously connects property which is similar and homogeneous. Millbrook is known as a ‘bedroom community’ of the urban area of Montgomery. The land annexed will simply add property which is to be a residential area.
“4. Throughout its complaint, exhibits, and brief by counsel, the Plaintiff has sought to show Millbrook acted unwisely and with poor planning in extending its boundaries in the manner that is complained of in this action. However, it should be noted that no citizen of Mill-brook has joined in contesting the actions of the elected officials. This Court is not prepared to hold Millbrook did not have the authority to extend its corporate limits because someone outside the city claims its purpose is suspect. Millbrook has submitted a number of exhibits setting out its purposes for this series of annexations, including a ‘Master Plan’ prepared by the Central Alabama Regional Planning and Development Commission in 1979. This plan recommended that the City Limits of Millbrook extend to the east boundary of Interstate 65.... The City extended its corporate limits in response to property owners who requested the services of the city. Without Millbrook and access to [its] utilities and other services, these people will not have full city services. All of the annexed area is presently residential in nature. One of he owners plans to build approximately 500 residences.
“This Court is satisfied that the Mill-brook City Council acted in the best interest of its constituents. The Council recognized that the City’s northern gateway to the major north-south artery of this state, Interstate 65, is of vital importance to the City. It is crucial to Mill-brook’s future development that Mill-brook, not Prattville, control the east side of the Highway 14 interchange. The City would be much more likely to improve, to enhance, and to beautify the eastern portion of the interchange so that travelers would be encouraged to go east rather than west to Prattville. The citizens of Millbrook would be greatly benefited by the business enterprises which may result from Millbrook’s efforts, as well as ensuring that their access to Interstate 65 is safe and well maintained.
“The contention that the ordinances should be held invalid and illegal because of improper purpose is without merit. This case is far different [from a case involving] citizens desiring annexation so they could sell alcoholic beverages. See Johnson v. Rice, 551 So.2d 940 (Ala.1989).
“The case law is clear that if the issue of annexation by corridor is ‘fairly debatable’ by a city governing body, the courts [will] defer to [its] judgment. City of Birmingham v. Wilkinson, 516 So.2d 585 (Ala.1987). The City Council of Mill-brook unanimously determined that [its] annexation by utilizing the abandoned railroad bed was reasonable.
“Consequently, the contention that the ordinances should be held invalid and illegal because of improper purpose is without merit.
“5. In brief and in the excellent oral arguments by counsel for Prattville, Plaintiff contended that Millbrook’s annexation ordinances are illegal and invalid because of the ‘long lasso theory.’ This Court does not agree. Prattville relies on City of Fultondale v. City of Birmingham, 507 So.2d 489 (Ala.1987). That case overruled City of Tuskegee v. Lacey, 486 So.2d 393 (Ala.1985), but reaffirmed City of Dothan v. Dale County, supra. In City of Fultondale, the proposed annexations by Fultondale and Trussville followed roadways running in all directions, ‘creating a spider-web ef- *273 feet and leaving areas of unincorporated territory surrounded by the roadways.’ [507 So.2d at 491.] These annexations were held invalid.
“In City of Dothan, the corridor was not a public right-of-way and the Court held it was a valid annexation.
“The case at bar is distinguished from Tuskegee and Fultondale in that there were no property owners requesting annexations in either [of those cases]. In [this case,] there were four property owners who petitioned [for the annexation by Millbrook]. The corridor in the Millbrook case is a county-owned railroad bed which has a public roadway on part of it. The railroad bed, however, is substantially larger than the roadway. A significant part of the corridor, approximately three quarters of a mile, has no roadway on it at all.
“The Alabama courts [in annexation cases] have approved corridors ... as long as two miles where property owner petitions are not required, City of Birmingham v. Smith, 507 So.2d [1312] at 1320 [ (Ala.1987) ], and as long as 10 to 11 miles in City of Birmingham v. Wilkinson, 516 So.2d at 586. Such corridors have been approved since the decision in City of Dothan. The appellate courts have certainly had ample time to overturn City of Dothan since it was decided in 1975. However, each time it is quoted in an opinion by the Supreme Court of Alabama, it has been quoted with approval.
“The Court is of the opinion that the instant case is consistent with City of Dothan and that this is not a ‘long lasso’ case. In Millbrook, there was a distinct purpose in the annexations. There were private property owners requesting annexation. ‘Contiguity’ was obtained by Millbrook by the use of the abandoned railroad bed.
“This Court has pondered extensively about the direction the appellate courts will take regarding strip annexation. Indeed; there is movement to restrict corridor annexation in this state. Analyzing, however, the majority opinions, this Court concludes that as long as a legitimate municipal interest exists and as long as an annexation was not a subterfuge, then the annexation by corridor would be upheld. Analyzing the strong dissents in a number of cases, this Court concludes that there is a strong movement to abolish strip annexation, as has been done in a large majority of states.
“Since there is no case on point and since there are numerous cases which do support both Plaintiff and Defendant, this Court determined that the ultimate question to be asked was who would be injured the most. If this Court ruled in favor of Millbrook, no one would be injured. If this Court ruled in favor of Prattville, every citizen in Millbrook, as well as the property owners who petitioned, would suffer a loss! Consequently, because of this and because of all the conclusions previously stated by this Court, the Court is compelled to rule in favor of Millbrook and grant its Summary Judgment Motion.
“The Plaintiff raised other issues in its complaint and exhibits. Counsel for the Plaintiff has argued forcefully and cogently the position of Prattville. However, applying all applicable law to the un-controverted facts in this case, the Court is of the opinion that the relief requested by Prattville in the Declaratory Judgment action should be denied.

“JUDGMENT OF THE COURT

“The foregoing considered, it is ORDERED, ADJUDGED, and DECREED as follows:
“1. That the Annexation Ordinances set out hereinabove are valid and legal.
“2. That the property described in the various ordinances is hereafter a part of the corporate limits of the City of Mill-brook.
[[Image here]]
“DONE and ORDERED this the 5th day of June 1992.
“/*/ SUE BELL COBB
“SPECIAL JUDGE”
After carefully reviewing the foregoing judgment, the evidence, and the arguments *274 of the parties, we hold that the trial court correctly entered the summary judgment in favor of the City of Millbrook. The trial court’s judgment is adopted as that of this Court.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON and INGRAM, JJ., concur.
STEAGALL, J., dissents.

. Millbrook filed a counterclaim, but that counterclaim is not at issue. See finding of fact no. 19, set out in this opinion.