PER CURIAM.
The Fort Morgan Civic Association, Inc. (“the Association”), and Charles A. Brow-dy, a resident of the unincorporated Fort Morgan area of Baldwin County and a member of the Association (hereinafter referred to collectively as “the FMCA”), sued the City of Gulf Shores and its mayor and city council (hereinafter referred to collectively as “the City”) in the Baldwin Circuit Court seeking a court order declaring the City’s annexation of a 19.3-mile segment of the land on which Fort Morgan Road is located and the adjacent land (“the Fort Morgan annexation”) to be invalid.[1] Following a nonjury trial, the trial court held that the FMCA had failed to establish that the Fort Morgan annexation was invalid; it accordingly entered a judgment in favor of the City. The FMCA appeals. We reverse and remand.
I.
Sometime in late 2002 or early 2003, Noel Hand, a surveyor for Volkert & Associates, Inc., an engineering firm, contacted David Bodenhamer, then mayor of Gulf Shores, on behalf of Volkert’s client, real-estate developer David Head, to discuss the possibility of Gulf Shores annexing property to its west and extending its city limits further down the Fort Morgan peninsula. Presumably, Hand and Head were interested in pursuing this annexation because property annexed into the City of Gulf Shores would have access to city services and be subject to Gulf Shores’ zoning requirements as opposed to the more restrictive zoning requirements Baldwin County had adopted for the Fort Morgan area. Gulf Shores had considered the possibility of expanding westward on previous occasions; however, it was apparently after meeting with Hand and Head that Gulf Shores decided to pursue the specific expansion plan now being challenged — the annexation of a piece of property 19.3 miles long and 330 feet wide extending from the western limit of the municipal limits of Gulf Shores to the eastern edge of the Fort Morgan historic site. The predominant characteristic of this property was Fort Morgan Road and its approximately 80-foot-wide right-of-way; however, the annexed property also included unimproved property adjacent to Fort Morgan Road, as well as sidewalks and several public-recreation areas. Once the Fort Morgan annexation was completed, it was expected that other property on the Fort Morgan peninsula contiguous to the annexed property would also seek to be annexed into Gulf Shores.[2]
The record is unclear as to the exact circumstances that followed Gulf Shores’ decision to pursue the Fort Morgan annexation; however, under the belief that the subject property was owned by the State, Gulf Shores apparently communicated its interest in annexing the property to state government officials. On March 25, 2003, Bob Riley, then governor of Alabama, and Barnett Lawley, then commissioner of the Alabama Department of Conservation and Natural Resources, submitted a petition on *1045 behalf of the State of Alabama formally requesting that the property be annexed into Gulf Shores pursuant to § 11-42-21, Ala.Code 1975. On April 14, 2008, the city council of Gulf Shores adopted an ordinance approving the annexation request, which ordinance was subsequently signed by the mayor and published into law.
Following the completion of the Fort Morgan annexation, residents of the Fort Morgan peninsula began protesting the fact that there had been no public hearing on the annexation petition and voicing their general displeasure with the annexation. Entreaties were apparently made to state and local government officials, and, in response, Governor Riley thereafter asked Mayor Bodenhamer to deannex the recently annexed property. Bradley Byrne and Steve McMillan, state legislators from Baldwin County, also made similar requests to city officials of Gulf Shores. However, believing the Fort Morgan annexation to be beneficial to Gulf Shores, Mayor Bodenhamer and the city council refused the requests. On May 13, 2003, the FMCA sued the City, seeking a court order declaring void the Fort Morgan annexation and all subsequent annexations by Gulf Shores of property contiguous to the annexed property.
Over the succeeding years, the FMCA and the City filed various motions, e.g., motions to dismiss and motions requesting a summary judgment, all of which were denied. At one point in November 2007, the FMCA and the City appeared to have reached a settlement that would have ended the dispute; however, the general membership of the Association subsequently rejected that proposed settlement when it was put to a vote. A two-day nonjury trial was finally conducted on April 27-28, 2011, and, on July 22, 2011, the trial court entered a judgment in favor of the City. The FMCA now appeals.
II.
“Because the trial court heard ore tenus evidence during the bench trial, the ore tenus standard of review applies. Our ore tenus standard of review is well settled. ‘ “When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.” ’ Smith v. Muchia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)).
“‘“The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
“ ‘ “[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’
“Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, ‘that presumption [of correctness] has no ap *1046 plication when the trial court is shown to have improperly applied the law to the facts.’ Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994).”
Kennedy v. Boles Invs., Inc., 53 So.3d 60, 67-68 (Ala.2010).
III.
On appeal, the FMCA makes essentially two arguments: (1) that the Fort Morgan annexation constitutes a “long-lasso” annexation, a method of annexation prohibited since this Court’s decision in City of Fultondale v. City of Birmingham, 507 So.2d 489, 490-91 (Ala.1987); and (2) that the Fort Morgan annexation is invalid because the State did not own all the annexed property, contrary to the State’s claim in the petition for annexation. We consider these arguments in turn.
Because the annexed property consists of a 19.3-mile strip of land essentially tracking Fort Morgan Road, the FMCA argues that the annexation is a prohibited long-lasso annexation. In City of Spanish Fort v. City of Daphne, 774 So.2d 567, 574-75 (Ala.2000), we described long-lasso annexations as follows:
“Under [the long-lasso] method, a city would purport to annex a public roadway of some length in an effort to create contiguity with an outlying parcel of property that would not otherwise be contiguous with the existing municipal limits. City of Fultondale v. City of Birmingham, 507 So.2d 489, 491 (Ala.1987). In City of Fultondale, this Court explicitly overruled City of Tuskegee v. Lacey, 486 So.2d 393 (Ala.1985). In City of Tuskegee, the City of Tuskegee had annexed 14 miles of a public roadway, without annexing any property lying along that roadway, in order to create contiguity with an outlying parcel of property. Although this Court upheld that annexation in City of Tuskegee, this Court overruled that decision in City of Fultondale. In City of Fultondale, this Court explained its reasons for rejecting the long-lasso method of annexation:
“ ‘Although Alabama law does not require that municipal boundaries form a regular shape, the legal and popular idea of a municipality in this country is “that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants — that is, a body of people collected or gathered in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not different places.” 56 Am.Jur.2d Municipal Corporations § 69 at 125 (1971); City of Dothan [v. Board of Comm’rs of Dale Cnty., 295 Ala. 131, 324 So.2d 772 (1975) ].’
“507 So.2d at 491.”
Although acknowledging that the annexed property contains a public roadway, the City argues that the Fort Morgan annexation was not a long-lasso annexation because the strip of annexed property was approximately 330 feet wide and the public right-of-way accounted for only approximately 80 feet of that width, the rest being made up of unimproved property, sidewalks, and recreational areas. In support of its argument, the City cites City of Prattville v. City of Millbrook, 621 So.2d 267 (Ala.1993), in which this Court upheld the City of Millbrook’s annexation of a county-owned abandoned railroad bed varying from 75 to 100 feet wide and containing a county road in the center. In doing so, we explicitly adopted the order of the trial court, in which it reasoned that “[t]he railroad bed ... is substantially larger than the roadway,” 621 So.2d at 273, and noted that this Court had, notwithstanding City of Fultondale, approved an *1047 nexations involving long, relatively thin strips of property, or corridors, so long as the corridor did not consist solely of a public right-of-way. See, e.g., City of Birmingham v. Wilkinson, 516 So.2d 585 (Ala.1987), and City of Dothan v. Board of Comm’rs of Dale Cnty., 295 Ala. 131, 324 So.2d 772 (1975).
The FMCA, however, argues that City of Prattville is not applicable and argues that corridor annexations such as those condoned in City of Dothan are permissible only when the annexation involves at least some “private” property.[3] In support of this argument, the FMCA cites Town of Vance v. City of Tuscaloosa, 661 So.2d 739, 744 (Ala.1995), in which this Court stated that “ ‘[cjorridori annexations involve the annexation of a small strip of private property; ‘long lasso’ annexations involve the annexation of a public road right-of-way.” However, upon a review of our caselaw, it is apparent that the definition of corridor annexation offered in Town of Vance is unnecessarily limited and inconsistent with the relevant statute.[4]
Annexation by petition is governed by § 11^42-21, Ala.Code 1975, which requires only that the annexed land be “contiguous to the corporate limits” of the annexing municipality. Although City of Tuskegee v. Lacey, 486 So.2d 393, 396 (Ala.1985), was overruled by City of Fulton-dale, the City of Tuskegee Court properly noted that “[tjhere is no statutory requirement that the land be private rather than public, and we find no basis for reading this limitation into the statute.” In City of Prattville, this Court affirmed an annexation of a strip of county-owned property, and, in City of Dothan, we affirmed the annexation of a strip of property owned by a quasi-governmental airport authority. See City of Fultondale, 507 So.2d at 492 (Houston, J., dissenting) (describing the owner of the annexed property in City of Dothan as a “tax-exempt, non-elector, quasi-municipal corporation” and making the *1048 point that there was no distinction between it and a governmental entity). Accordingly, we hold that there is no requirement that a corridor annexation must include private, as opposed to public, property to avoid being categorized as a long-lasso annexation.
We therefore agree with the City that the Fort Morgan annexation is analogous to the City of Millbrook’s annexation of the county-owned abandoned railroad bed in City of Prattville. In City of Ful-tondale, this Court succinctly stated its holding in the final sentence of the opinion: “[A]nnexation by use of public road rights-of-way is invalid.” 507 So.2d at 491. The annexed property in this case undisputedly did not consist solely of a public-road right-of-way. Rather, the annexed property consisted of a strip of land 830 feet wide, less than 25% of which was a public right-of-way. As in City of Prattville, additional property owners subsequently petitioned to be annexed into the annexing city based upon their new contiguity with the originally annexed property; however, that fact does not transform the annexation into a long-lasso annexation that must be held invalid. The Fort Morgan annexation cannot be voided on the basis that it was a prohibited long-lasso annexation.
IV.
The FMCA next argues that the Fort Morgan annexation is invalid because, the FMCA alleges, the State did not own all the annexed property. Specifically, the FMCA argues that five parcels of property included in the annexed property were owned by the federal government and that two parcels were owned by private individuals. The FMCA argues that this fact requires the entire Fort Morgan annexation to be voided because (1) -without these seven parcels, portions of the annexed property would not be contiguous to Gulf Shores, and (2) neither the alleged private owners nor any representative of the federal government signed the annexation petition. See § 11-42-21 (stating that a requirement for annexation by petition is that all the owners of the property to be annexed sign the petition).
At trial, the FMCA identified five parcels it alleged were owned by the federal government — lots 5, 15, 43, 44, and 56. In support of this argument, the FMCA submitted the deposition testimony of Nathan Felton, a lead law examiner for the Bureau of Land Management with the United States Department of the Interior. Felton testified that he had reviewed the tract books maintained by the federal government to record all transactions of federal public-domain lands and that those records indicated that these five parcels had never left the possession of the federal government since they were first surveyed in the early 1800s. He further testified that the five parcels encompassed the entire width of different sections of Fort Morgan Road and specifically that the federal government had never conveyed these lots to any entity — public or private — and that they accordingly were still public-domain lands belonging to the federal government.
The City acknowledges that, although the State had approximately 300 deeds representing parcels of property that were included in the Fort Morgan annexation, the State did not have a deed for every parcel of property that was included in the Fort Morgan annexation. Specifically, the City acknowledges that it had no deed for lots 43, 44, and 56. Nevertheless, the City argues that the trial court correctly upheld the Fort Morgan annexation because, it argues: (1) Felton’s testimony was inconclusive; (2) there was evidence indicating that the State of Alabama was listed as the *1049 owner of all the annexed property on the Baldwin County tax assessor’s records; and (3) the Bureau of Land Management in a May 24, 1961, letter to the Alabama Secretary of State listing all federal public lands in Alabama omitted lots 15, 43, 44, and 56, and claimed only lot 5 on behalf of the federal government.
We disagree with the City’s argument that Felton’s testimony was inconclusive. The record reveals the following exchange regarding who owned these five parcels:
“Q. [FMCA’s counsel:] So is it the position of the Bureau of Land Management that these five parcels that we are discussing here today are public domain lands?
“A. [Felton:] Yes.
“Q. Is it the Bureau of Land Management’s position that these five parcels do not belong in any manner to the State of Alabama?
“A. That’s correct.”
The City attempts to counter Felton’s testimony by arguing that there might be other records Felton did not review and that records might have been lost and by noting that Felton would not say for certain that the federal government had not conveyed the lots at issue. However, these arguments are mere speculation that are not supported by Felton’s actual testimony. When cross-examined by the City’s attorney on this subject, Felton testified as follows:
“Q. Sitting here today, can you say for certain that the United States government has not conveyed [lot 5] to any other entity, whether public or private?
“A. I can only say, based on what I have seen in the records, they have not.
[[Image here]]
“Q. “Is it possible that pages could be missing from the tract books?
“A. It is possible, but I wouldn’t say that there are pages missing from this one. But that’s a possibility, yes.”
While acknowledging that there could be other documents that “pertain to these lands” in field offices, Felton also testified that there were no other source documents maintained by the Bureau of Land Management that would reflect a conveyance of these lands other than the records he had reviewed. Considered as a whole, there was no equivocation in Felton’s testimony that the federal government owned the five lots.
The City next argues that the trial court’s judgment was nevertheless correct because there was evidence indicating that the State of Alabama was listed on the Baldwin County tax assessor’s records as the owner of all the parcels of property included in the Fort Morgan annexation. Section 11-42-20, Ala.Code 1975, provides that “[t]he term ‘owners,’ as used in this article [governing annexation by petition], shall mean the person in whose name the property is assessed for ad valorem tax purposes in the absence of proof to the contrary.” Setting aside the issue whether Felton’s testimony constituted such “proof to the contrary,” we note that, even though the trial court stated in its order that “[t]he City presented Baldwin County tax assessor’s records to show the State of Alabama is assessed for the entire Fort Morgan Road tract” and even though the City repeatedly makes the same assertion in its brief to this Court, the record, in fact, contains no such evidence of tax-assessor records. Accordingly, the presumption of § 11-42-20 is inapplicable.
Nevertheless, the May 24, 1961, letter from the Bureau of Land Management to the Alabama Secretary of State listing all federal public lands in Alabama — yet omit *1050 ting lots 15, 43, 44, and 56 — is evidence indicating that the federal government had disclaimed its interest in those lots. The federal government, however, apparently did still claim lot 5 as of that date. At trial, the City called Terry Boyd, a survey- or and engineer with the Alabama Department of Conservation and Natural Resources, who testified that lot 5 had been conveyed to the State by deed on August 12,1936:
“Q. Let me show you what has been marked as Defendant’s Exhibit No. 1 and ask you what the document is?
“A. It’s a deed from — I don’t have my reading glasses. It’s to the Alabama State Commission of Forestry for $1 from the — from the Gulf Beach Land and Development Company. It says the 21st day of April 1930 at the top of the deed and it was signed August 12, 1938 [sic].
“Q. Now—
“A. But it describes a parcel of land containing 185 acres that lists stations along Fort Morgan or Dixie-Graves Parkway and it lists the sections of land and it’s in Township 9 South, Range 2 East is where it commences. And it’s got a bunch of calls in this from, like I say, containing — it says 185.8 acres, the same more or less.
“Q. Is that a true and accurate copy of the deed maintained by the Department of Conservation?
“A. Yes.
“Q. And was that the original of that deed maintained by your office as part of the Dixie-Graves Parkway documentation?
“A. Yes.
“[The City thereafter moved to admit Defendant’s exhibit No. 4, a larger copy of the deed.]
“Q. Does that appear to be the same?
“A. Yeah. I was wrong. It was the 12th day of August 1936.
[[Image here]]
“Q. Did you ever determine whether or not that deed corresponded with any of the lots the federal government— well, I’m sorry. What, if any, lots did that deed correspond with?
[[Image here]]
“A. To my recollection back to 2006, Lots 5 and 15. I mean, this is a long strip of land that covers 185 acres. So, I mean, I could probably find it on the map and plot it up for you.
“Q. Looking at Plaintiffs Exhibit No. 16 [a map of the annexed property], is it — well, your testimony — which lots do these concern?
“A. It would be those two. That’s section 25 and 26 Township North — 5 and 15. Like I said, it’s a long strip that covers a lot of parcels there.”
Thus, Boyd testified that the State did, in fact, have a deed for lots 5 and 15.
In conclusion, the trial court had before it the following evidence concerning federal ownership of the five disputed parcels: (1) Felton’s deposition testimony indicating that lots 5, 15, 43, 44, and 56 were owned by the federal government; (2) the May 24, 1961, letter from the Bureau of Land Management indicating that lot 5 — but not lots 15, 43, 44, and 56 — was owned by the federal government; and (3) Boyd’s testimony indicating that the State had acquired ownership of lots 5 and 15 via a 1936 deed. This conflicting evidence required the trial court to make a factual determination. It did, concluding that the State of Alabama owned the five disputed parcels of land. Because there was evidence to support that conclusion, it is afforded a presumption of correctness under the ore tenus rule, and we accordingly decline to overrule it.
*1051 The FMCA also argues, however, that two parcels included in the Fort Morgan annexation were owned by private individuals who did not sign the annexation petition. Specifically, the FMCA submitted into evidence two deeds dated March 1924 whereby Carawan Nelson and Fanny Nelson conveyed two adjacent parcels of land to Cicero Nelson and Kate Ward. Coleman Bryars, owner of Alabama Land Title, a title company in Baldwin County, testified at trial that Fort Morgan Road traverses both of these parcels and that they were included in the Fort Morgan annexation. He further testified that he researched the title to both of these parcels by examining the records at the Baldwin County probate office and tax assessor’s office, from their patent up to the time of his testimony, and that he could find no evidence indicating that they had ever been conveyed to the State of Alabama. The City argues that Bryars’s title search was incomplete because he did not consult records at the Department of Conservation and Natural Resources; however, this argument lacks merit in light of § 9-2-121(c), Ala.Code 1975, which provides that any State department or agency that holds or acquires legal title to property in the State must “file or have filed for record in the county wherein such land lies all instruments and deeds conveying title to such land out of or into the State of Alabama.”
At trial, the City also submitted the testimony of Becky Max, an employee of the Baldwin County Revenue Office. Max testified that she had searched the tax assessor’s records and found no property off Fort Morgan Road that was assessed in the name of Cicero Nelson or Kate Ward. She did not, however, state in whose name the two parcels in question were assessed for tax purposes, whether it was the State or some other individual. Moreover, the FMCA argues, she did not state what tax records she had searched for Cicero Nelson’s and Kate Ward’s names — the records existing in 2011 when she testified, the records existing in 2003 when the Fort Morgan annexation occurred, or the records from decades earlier when Fort Morgan Road was constructed.
The trial court resolved the issue regarding these two allegedly privately owned parcels by concluding that, even though the State could not produce deeds establishing title to these parcels, which traversed Fort Morgan Road, there was nevertheless sufficient evidence to support a finding that the State had acquired the properties through adverse possession, either by prescription or by statute. On appeal, the FMCA argues that no such evidence was admitted at trial. We agree.
In Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618 (Ala.1980), this Court summarized the elements that must be proven before a finding of adverse possession can be made:
“In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. See, Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. § 6-5-200, Ala. Code 1975. See, Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962).”
*1052 The State does not pay taxes on property it owns; however, as noted previously, there was no evidence adduced at trial indicating that these two parcels were even assessed to the State, much less evidence indicating that the State had color of title or a claim to have obtained the land through a testamentary devise. Thus, the trial court erred in concluding that the State could have acquired the two parcels via statutory adverse possession.
The FMCA also argues that there was no evidence presented at trial of “actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years” so as to support a finding of adverse possession by prescription. 390 So.2d at 618. At most, the FMCA argues, there was evidence only that Fort Morgan Road, a State highway, ran across the property and that the highway was presumably used by the public. This evidence, the FMCA further argues, would not support even a finding that the State had acquired the roadway itself by adverse possession — much less the entirety of the two parcels — because “[t]he general rule is to the effect that the public acquires an easement only in the highways, the fee of the land remaining in the owner, subject to the easement.” Purvis v. Busey, 260 Ala. 373, 377, 71 So.2d 18, 21 (1954). See also Town of Elmore v. Town of Coosada, 957 So.2d 1096, 1101 (Ala.2006) (“The Purvis case ... stands for the proposition that a property owner of either side of a roadway retains ownership of the roadway up to the center line in spite of a prescriptive easement obtained by the public.”).
We agree that there was insufficient evidence to support the trial court’s conclusion that the State had acquired title to the two parcels alleged to be privately owned via adverse possession by prescription. The only evidence before the trial court regarding ownership of those two parcels indicated that they were owned by Cicero Nelson and Kate Ward. The trial court accordingly erred in upholding the Fort Morgan annexation because the State’s petition for annexation, which was not signed by all owners of the annexed property, did not comply with § 11-42-21.
V.
The FMCA sued the City, asking the trial court to declare the Fort Morgan annexation invalid either as a prohibited long-lasso annexation or because, the FMCA alleged, the annexed property included property not owned by the State— the party who initiated and signed the annexation petition. Following a nonjury trial, the trial court ruled in favor of the City. However, because the FMCA submitted evidence at that trial indicating that two parcels of property included in the Fort Morgan annexation were owned by private individuals and because the City failed to submit any evidence indicating that those same parcels were owned by the State, the trial court exceeded its discretion in upholding the annexation. The Gulf Shores ordinance granting the State’s petition for annexation and effecting the Fort Morgan annexation is accordingly void. All subsequent annexations of property on the Fort Morgan peninsula by the City that relied for contiguity upon property included in the Fort Morgan annexation are likewise void. See Town of Elmore, 957 So.2d at 1098 n. 3 (stating that if the annexation of a parcel of property is invalid, then all properties subsequently annexed based on contiguity with the parcel involved in the now void annexation “are noncontiguous and the annexation of them is invalid”). The judgment of the trial court is reversed and the cause remanded.
REVERSED AND REMANDED.
*1053 MALONE, C.J., and STUART, BOLIN, PARKER, SHAW, MAIN, and WISE, JJ„ concur.
WOODALL and MURDOCK, JJ„ concur in the result.

. Fort Morgan Road is also known as Fort Morgan Parkway, Dixie-Graves Parkway, and State Highway 180.

. Following the annexation, approximately 80 other parcels of land in the Fort Morgan area were annexed into Gulf Shores.

. The FMCA has not asked this Court to overrule City of Dothan or made the argument that all corridor annexations should be prohibited. To the contrary, it expressly recognizes the validity of corridor annexations under Alabama law in its brief filed with this Court. FMCA’s brief, pp. 37-39.
Even as it was authorizing long-lasso annexations in City of Tuskegee, this Court explicitly recognized that the majority of courts in other jurisdictions treat corridor annexations with disfavor. 486 So.2d at 396. Long-lasso annexations have since been prohibited by this Court; however, we have continued to recognize the validity of corridor annexations, notwithstanding some Justices' stated reluctance to do so. See, e.g., City of Madison v. City of Huntsville, 555 So.2d 755, 763 (Ala.1989) (Steagall, J., concurring specially) (recognizing the rule of stare decisis but expressing reservations about allowing corridor annexations), and City of Fultondale, 507 So.2d at 492 (Houston, J., dissenting) (stating that he would overrule City of Dothan and "abolish strip or corridor annexation in Alabama, and require a substantial common boundary for municipal annexation as is required by a substantial majority of the states”). However, no party in this case has asked us to overrule City of Dothan, and we accordingly leave any reexamination of our holding in that case for another day. See Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 926 (Ala.2002) ("Stare decisis commands, at a minimum, a degree of respect from this Court that makes it disinclined to overrule controlling precedent when it is not invited to do so.”).

. Moreover, the discussion of corridor annexations in Town of Vance was dicta inasmuch as the Court ultimately held that it was unnecessary to consider whether the annexation before it constituted a permissible corridor annexation or an invalid long-lasso annexation because that case involved an annexation by legislation, and the Court noted that "the [Alabama] Constitution is the only limitation on the legislature's authority to annex, while municipalities, on the other hand, are limited by the requirements of the general laws, including the requirement of contiguity.” 661 So.2d at 744.