THOMAS, Judge.
LaDon Jones appeals from a judgment entered by the Henry Circuit Court (“the trial court”) in favor of Adams Farms, Don Adams, and First South Farm Credit, ACA.
The record indicates the following. This case arises from a dispute over a strip of land approximately 210 feet long and 30 feet wide (“the strip”). In 1972, Jones Construction, a general partnership consisting of LaDon, his father, and his brother, Linward Jones, purchased Lot 52 from U.L. Brackin and Lot 54 from Ralph Ward, believing the lots to be two adjacent *373 parcels, each consisting of one acre of land. The strip in question lies directly between these two lots. In August 2011, Carl Brackin[1] sold the remaining Brackin land, which shared a boundary line with Lot 52, to Adams Farms. Questions of ownership of the strip arose during the survey performed in connection with the conveyance of the remaining Brackin land from Carl to Adams Farms.
On February 13, 2012, LaDon sued Adams Farms and Don Adams, the owner of Adams Farms (sometimes referred to collectively as “Adams”), to quiet title to the strip. In the complaint, LaDon asserted ownership of the strip through adverse possession. LaDon also requested that the trial court issue a temporary restraining order, a preliminary injunction, and a permanent injunction preventing Adams from entering upon the strip. The trial court issued a temporary restraining order on February 13, 2012; that order was subsequently renewed. Adams answered LaDon’s complaint on March 6, 2012. La-Don filed an amended complaint on March 14, 2012, adding First South Farm Credit, ACA (“First South”)[2] as a defendant; Adams filed an answer to the amended complaint on March 20, 2012.
The trial court held a hearing regarding LaDon’s request for a preliminary injunction on March 28, 2012.[3] At the instruction of the trial court, LaDon submitted a memorandum of law on April 25, 2012; Adams filed a response to the memorandum of law and a motion for a summary judgment that included an affidavit from Carl on May 1, 2012. First South filed an answer to the amended complaint and a motion for a summary judgment on May 8, 2012.
A trial was held on May 30, 2012. The relevant testimony is as follows. Both Linward and LaDon testified that they had believed the lots they purchased were one acre each and shared a common boundary line and that neither of them had noticed that the deed for Lot 52, which was admitted into evidence, conveyed only 0.88 acres. In 1982, Jones Construction dissolved and conveyed Lots 52 and 54 to LaDon individually. LaDon testified that from 1972 to 1982 he maintained a year-round garden on Lot 52 and on the strip.[4] He further testified that the strip provided the only access to his property and that he had used the strip for ingress and egress since 1972.
LaDon and his son, Huey Jones, further testified that, from 1982 through 1986, Lot 52 and the strip were used to raise cattle. As part of that operation, LaDon testified, he constructed a fenced “cattle run” from his barn, located on Lot 54, across the strip, into the grazing area located on Lot 52. Testimony further indicated that, from 1986 until the early 1990s, that same area was used to pasture horses. According to LaDon, he had removed the fence after he no longer pastured horses, but he had continued to maintain a garden on the strip and to mow the grass growing on the strip. He also testified that he had erected a birdhouse on the strip in 1983 that remained until Don Adams, or his repre *374 sentatives, removed it in 2011.[5]
Carl testified that he began to “look after” the remaining Brackin land after his father died in 1990. According to Carl, beginning in 1993, he drove across the remaining Brackin land twice a year, using the strip as ingress to and egress from the property. Carl also testified that during those biannual visits he had never witnessed any evidence indicating that La-Don, or anyone else, was asserting ownership of the strip. Carl also testified by affidavit that LaDon had used the strip with permission from the Brackin family and that he would have taken “the necessary action” had he witnessed an attempt by LaDon to exercise ownership over the strip.
The trial court entered a judgment on June 21, 2012. The judgment stated:
“The essential facts: [LaDon] and his predecessor in interest have owned lot 54 the land where his home is situated in Newville since the 1960’s.[6] In 1972 [LaDon] purchased lot 52 from U.L. Brackin. Lot 52 was a section slightly less that one acre of an area of farmland. [LaDon] states his belief that lot 52 was one acre, but the deed establishes that U.L. Brackin retained a ‘strip’ of land for access to his field. This strip of land divides lot 52 and lot 54 and is the subject of [LaDon’s] claim to quiet title by adverse possession. Over the years lot 52 was generally used by [LaDon] as a garden. From 1982 to 1986 lot 52 was used to graze cows and from 1986 to the 1990’s horses were pastured there. In 1982 [LaDon] erected a fence across the strip to create a lane or pathway for the cows to pass between lot 52 and lot 54. Sometime in the 1990’s [LaDon] removed the fence. Since the purchase of lot 52 [LaDon] has mowed the grass on the strip and erected a gourd pole on the strip in 1983. The strip was rarely, if ever used for access to U.L. Brackin’s farmland because more suitable access exists in another location. The strip is essentially situated in location and size as what would be a continuation of the Town of Newville’s paved road known as Patterson Street, which abruptly -stops at the strip. All was neighborly and peaceful these many years until the heirs of U.L. Brackin sold the field to Defendant Adams Farms. Realizing the deed of the field included the strip, [LaDon] erected a fence blocking access and posted ‘no trespassing’ signs. In response [Don Adams] used his excavator to tear down the fence and the gourd pole. The Sheriff was summoned and the pending litigation to quiet title was instituted.
“The claim for adverse possession is governed by a ten-year rule. Code of Alabama 6-5-200. The Court has carefully weighed the evidence and studied the adverse possession cases of the Alabama Supreme Court and the Court of Civil Appeals and has deliberated the case. Title by adverse possession is a heavy burden, by clear and convincing evidence, with a presumption in favor of the record owner. Cooper v. Cate, 591 So.2d 68 (Ala.1991).
*375 “Accordingly, judgment entered for [Adams and First South] on [LaDon’s] claim to quiet title by adverse possession; judgment entered for [LaDon] awarding a private easement by prescription over the strip between lot 52 and lot 54. Any other relief requested by either party and not addressed by this order is denied.”
LaDon timely appealed to our supreme court on July 27, 2012, and the supreme court transferred the case to this court pursuant to § 12-2-7, Ala.Code 1975. In his brief, LaDon argues that the trial court erred in denying his claim alleging adverse possession in light of the trial court’s express findings of fact in LaDon’s favor. He further argues that the trial court’s award of an easement by prescription is essentially a conclusion that LaDon also satisfied the elements of adverse possession.
“In Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618 (Ala.1980), [our supreme court] summarized the elements that must be proven before a finding of adverse possession can be made:
“ ‘In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. See, Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. § 6-5-200, Ala.Code 1975. See, Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962).’ ”
Fort Morgan Civic Ass’n, Inc. v. City of Gulf Shores, 100 So.3d 1042, 1051 (Ala.2012).[7]
To prevail on his adverse-possession claim, LaDon was required, among other things, to present clear and convincing evidence to overcome the presumption that his use of the strip was permissive. The trial court’s judgment included numerous findings of fact that appear to support LaDon’s claim that his use of the strip was hostile.
However, the trial court’s judgment did not include an express finding as to whether LaDon’s use of the strip was hostile rather than permissive. Instead, the trial court determined that LaDon had not adversely possessed the strip — implying that LaDon’s use of the strip was permissive. However, the trial court alternatively awarded LaDon a prescriptive easement over the strip. Hostile use of land for 20 years is an essential element of a prescriptive easement. See Johnson v. Coshatt, 591 So.2d 483, 485 (Ala.1991).
“ ‘To establish an easement by prescription, the claimant must use the premises over which the easement is claimed for a period of twenty years or more, adversely to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner. The presumption is that the use is permissive, *376 and the claimant has the burden of proving that the use was adverse to the owner. Cotton v. May, [293 Ala. 212, 301 So.2d 168 (1974) ]; Belcher v. Belcher, 284 Ala. 254, 224 So.2d 613 (1969); West v. West, 252 Ala. 296, 40 So.2d 873 (1949).’ ”
Id. (quoting Bull v. Salsman, 435 So.2d 27, 29 (Ala.1983)). Because we cannot reconcile the judgment’s contradictory rulings, we reverse the trial court’s judgment and remand the cause for the trial court to make a finding regarding whether La-Don’s use of the strip was permissive or hostile based on the evidence already presented and to rule on the adverse-possession and prescriptive-easement claims in a manner that is consistent with that finding.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.

. Carl Brackin is the son and heir of U.L. Brackin, who died in 1990.

. First South holds the mortgage to the property owned by Adams Farms.

. Although there is no order regarding the preliminary injunction, LaDon’s memorandum of law indicates that the trial court granted the preliminary injunction.

.LaDon was already the sole owner of and resided on Lot 55, which is adjacent to Lot 54. His house burned down in 1982. He rebuilt the house on Lots 54 and 55.

. LaDon testified that when he noticed the survey flags placed in connection with Adams Farms’ purchase of the remaining Brackin land, he erected a fence across the strip and posted a "No Trespassing” sign. He further testified that Don Adams, or his representatives, tore down the fence, the sign, and the birdhouse with an excavator.

6. The record clearly indicates that Jones Construction purchased Lot 54 in 1972 and that Jones Construction conveyed Lot 54 to LaDon ¿n 1982. None of the parties note this error on appeai.

. The trial court held that LaDon's claim is governed by the 10-year rule pursuant to § 6-5-200, Ala.Code 1975. We note that this claim does not appear to meet the statutory-adverse-possession requirements outlined in § 6-5-200; however, none of the parties have raised that issue on appeal.